GENERAL BANCSHARES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89785.    Filed November 26, 1962.

*Henry C. Lowenhaupt, Esq.*, for the petitioner.
*Richard J. Shipley, Esq.*, for the respondent.

OPINION.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the year 1957 in the amount of $10,498.07. Petitioner claims an overpayment of income tax for 1957 of $9,152.36. The issue for decision is whether expenses incurred by petitioner in paying stock dividends to its shareholders in 1957 are deductible.

All of the facts have been stipulated and are found accordingly.

General Bancshares Corporation (hereinafter referred to as petitioner) was incorporated under the laws of the State of Missouri in 1946 and has its principal place of business in St. Louis, Missouri. It filed its corporation income tax return for the year 1957 with the district director of internal revenue at St. Louis, Missouri.

Since its incorporation, petitioner has paid dividends on its common stock in common stock as follows:

| Date | Stock dividends | Date | Stock dividends |
|---|---|---|---|
| | *Percent* | | *Percent* |
| 1950 | 2 | Oct. 1956 | 2 |
| 1951 | 6 | Apr. 1957 | 2 |
| Oct. 1955 | 2 | Oct. 1957 | 2 |
| Apr. 1956 | 2 | | |

During the year 1957 petitioner accrued and paid as expenses of issuing stock dividends a total amount of $22,176.50 comprised of the following items:

| | |
|---|---:|
| St. Louis Union Trust Co., 1,000 advice sheets | $183.00 |
| St. Louis Union Trust Co., printing | 106.19 |
| St. Louis Union Trust Co., mailing | 1,024.04 |
| St. Louis Union Trust Co., fees as transfer agent | 15,272.50 |
| First National Bank, registrar, 1956 services | 2,148.30 |
| Columbia Bank Note Co., 1,000 stock certificates | 1,250.00 |
| Stock issuance taxes | 1,192.47 |
| Listing fees, New York Stock Exchange | 500.00 |
| Listing fees, Midwest Stock Exchange | 500.00 |
| Total | 22,176.50 |

These amounts, claimed as business expense deductions by petitioner on its income tax return for the year 1957, have been disallowed by respondent in his notice of deficiency.

During the year 1958 petitioner paid additional amounts which it had incurred in connection with issuance of stock dividends during 1957, which amounts were properly accruable as of December 31, 1957. These expenses were as follows:

| | |
|---|---:|
| Fees, St. Louis Union Trust Co., transfer agent: | |
| Stationery and printing | $515.50 |
| Postage | 1,366.11 |
| Miscellaneous | 13,466.26 |
| Services, First National Bank in St. Louis | 3,065.95 |
| Total | 18,413.82 |

Petitioner did not claim these amounts as deductions on its income tax return for the year 1957 but respondent in his notice of deficiency allowed $2,801.02 of these amounts as a deduction. Petitioner claims an overpayment of income tax for the year 1957 based on respondent's failure to allow as a deduction the remaining $15,612.80 of these amounts.

During 1957 petitioner's principal business activity was in the field of investment holding and finance. It held controlling amounts of the capital stock of a number of affiliated corporations in the insurance or banking fields and derived the major part of its income from dividends from these companies.

Petitioner's 1957 income tax return shows a charge to earned surplus of $174,736 for its corporate stock issued to its shareholders in 1957. Also shown on petitioner's 1957 income tax return is an increase in petitioner's common stock capital account for 1957 of $174,775.

Neither party has cited, nor have we found, any case passing upon the deductibility by a corporation of expenses incurred by it in paying

a stock dividend. It appears, therefore, that the precise issue here presented is one of first impression.[1]

Generally, expenses incurred by a corporation for its organization or in making subsequent changes in the amount of its capital stock are considered to be capital expenditures. *Missouri-Kansas Pipe Line Co.* v. *Commissioner*, 148 F. 2d 460 (C.A. 3, 1945), affirming a Memorandum Opinion of this Court; *Skenandoa Rayon Corporation*, 42 B.T.A. 1287 (1940), affd. 122 F. 2d 268 (C.A. 2, 1941), certiorari denied 314 U.S. 696; *Motion Pictures Capital Corporation*, 32 B.T.A. 339 (1935), affd. 80 F. 2d 872 (C.A. 2, 1936) ; *Firemen's Insurance Co.*, 30 B.T.A. 1004 (1934) ; *Borg & Beck Co.*, 24 B.T.A. 995 (1931) ; and *Frischkorn Real Estate Co.*, 21 B.T.A. 965 (1930).

In *Borg & Beck Co.*, *supra*, the taxpayer in one year changed its capitalization from a total outstanding capital stock of $1 million divided into 200,000 shares of a par value of $5 per share, to 100,000 shares of no par value but of a declared value of $10 per share. In the next year the taxpayer increased its authorized capital stock from 100,000 shares having no par value to 125,000 shares having no par value. Various stamp, filing, and printing fees and expenses were incurred with respect to each of these changes. We held these expenses to be capital expenditures which were not deductible since they were incurred in connection with a change in the capital structure of the corporation.

As petitioner points out, the stock dividends which it paid in 1957 were only 2 percent whereas the capital stock of the taxpayer in *Borg & Beck Co.*, *supra*, was increased by 25 percent in the second year there involved. It would require almost 6 years of paying 2 percent semiannual stock dividends to effect a 25 percent increase in capital stock. However, the difference in this case and *Borg & Beck Co.*, *supra*, is one of degree and not of kind. Petitioner's earned surplus account for 1957 was charged with the sum of $174,736, representing stock distributed to its shareholders, and its common stock capital account shows an increase for 1957 of $174,775. It appears that this increase in petitioner's common stock capital account for 1957 represents the aggregate of the par value of petitioner's common stock

---

[1] Respondent in 1960 published a ruling that costs incurred in connection with issuance of stock dividends are not deductible as ordinary and necessary business expenses since such costs are capital in nature. Rev. Rul. 60–254, 1960–2 C.B. 42. Petitioner argues that the fact that this ruling was first published in 1960 shows that prior to 1960 respondent had not challenged the deduction of such costs as ordinary and necessary business expenses. Respondent in his reply brief does not specifically deny that petitioner's conclusion with respect to his treatment of such costs prior to 1960 is correct but states that this fact does not have a bearing upon the correctness of his present position that such expenses are not deductible. Certainly, petitioner may have believed that the costs of issuing its stock dividends in 1957 were deductible if similar deductions in prior years had not been disallowed by respondent, but respondent is correct in his position that this fact does not prohibit his being sustained in his present position if that position is legally correct.

issued as stock dividends to its shareholders in that year. This sum, under Missouri law,[2] is now dedicated to the business and cannot be paid out in dividends. The stock dividends have caused a change in petitioner's capital structure, even though no new capital was acquired. Cf. *Borg & Beck Co., supra.* For this reason we feel that the expenses involved in issuing the stock dividends are capital in nature and not deductible.

Petitioner argues that a different view of a change in capital structure should be adopted for tax purposes than for purposes of State corporate law, since for the purposes of determining the taxability of subsequent cash dividends, accumulated earnings and profits are not reduced by transfer from the earned surplus to the capital stock account when a stock dividend is issued. This argument ignores the fact that the amount so transferred is under State law no longer available for payment of a cash dividend but has become a part of the corporate stated capital.

In support of its position, petitioner argues that the issuance of these 2-percent stock dividends merely maintains the capital structure of the business and the expenses incident thereto are analogous to those allowed to individuals under section 212 of the Internal Revenue Code of 1954;[3] that the expenses relate to "carrying on a trade or business" in that by issuing stock dividends petitioner can retain its funds thus improving its credit standing; that the expenses incurred do not build up any meaningful asset; and that under the philosophy of section 248 such expenses should be allowed as deductions.

The issuance of stock dividends does not maintain the capital structure of the business but rather effects a definite change. It places

---

[2] Vernon's Ann. Mo. Stat., 1949, vol. 17, sec. 351.220, provides in part as follows: "Payment of dividends on outstanding shares of stock.

"The board of directors of a corporation may declare and the corporation may pay dividends on its outstanding shares in cash, property, or its own shares, subject to the following limitations and provisions:

"(1) No dividend shall be declared or paid at a time when the net assets of the corporation are less than its stated capital or when the payment thereof would reduce the net assets of the corporation below its stated capital;

\* \* \* \* \* \* \*

"(3) If a dividend is declared payable in its own shares having a par value, such shares shall be issued at the par value thereof and there shall be transferred to stated capital at the time such dividend is declared an amount of surplus equal to the aggregate par value of the shares to be issued as a dividend;

\* \* \* \* \* \* \*

"The record does not show whether petitioner's common stock is par or no par value. However, petitioner on brief has quoted part of a letter purportedly sent to its shareholders wherein it is stated that the common stock issued as a dividend had a par value of $1 per share. Even if the stock were no par value, paragraph 5 of section 351.220 provides that when a stock dividend is paid in stock having no par value there shall be transferred from the surplus account to capital account for each share so issued an amount equal to a value for said share as fixed by the board of directors."

[3] All references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

amounts into stated capital and thus unavailable for distribution as cash dividends, which otherwise might be distributed as cash dividends. If petitioner continues with semiannual 2-percent stock dividends over a number of years, the resulting change in its capital structure will be pronounced. Such a change is not comparable to replacement of parts necessary to keep some capital unit in operation. Cf. *Libby & Blouin, Ltd.*, 4 B.T.A. 910 (1926). Each issuance of new stock and the resulting change in capital structure are permanent and the effect is cumulative.

The capitalizing of earned surplus by petitioner may have improved its credit position, but even if this were the purpose of petitioner's change in its capital structure, the expenses of such change are not deductible as ordinary and necessary business expenses. Cf. *Fishing Tackle Products Co.*, 27 T.C. 638, 645 (1957).

The fact that no meaningful or valuable asset is being built up by the expenses incurred in paying a stock dividend does not *ipso facto* make such expenditures deductible. Sections 263 and 162 together are not all inclusive. Certain expenditures which are capital in nature but do not cause any increase in the value of an asset are not deductible as ordinary and necessary business expenses. See *Baltimore & Ohio Railroad Co.*, 29 B.T.A. 368 (1933), affd. 78 F. 2d 460 (C.A 4, 1935) ; *Holeproof Hosiery Co.*, 11 B.T.A. 547 (1928) ; and *First National Bank of St. Louis*, 3 B.T.A. 807 (1926).

Section 248 has not changed any of the earlier distinctions made between regular and capital expenses. The section merely permits deduction of corporate organizational expenditures which theretofore had been treated as capital expenses. In the absence of the application of section 248 or of any other statutory exception, the general rules relating to capital expenditures apply. Petitioner does not contend that section 248 or any other statutory exception applies to the expenditures here in issue.

*Decision will be entered for respondent.*