OPINION. Raum, Judge: The New Jersey Publishing Company had three classes of stock outstanding in August 1942: 1,600 shares of voting common, 2,500 shares of non-voting common, and 3,200 shares of nonvoting 8 per cent cumulative preferred having a par value of $100. The shares of stock were held as follows: [[Image here]] Pursuant to a plan of readjustment of its corporate structure, the Company issued a total of $320,000 face amount 8 per cent 20-year debentures in August 1942, and exchanged the debentures for all its preferred stock, each holder receiving a $1,000 debenture for 10 shares of preferred stock. The Company canceled the stock thus received and adjusted the capital on its books accordingly. In determining the deficiencies originally, the Commissioner apparently took the position that the distribution of the debentures in redemption and cancelation of the preferred stock was essentially equivalent to the distribution of a taxable dividend, within the meaning of section 115 (g) of the Internal Revenue Code. The Commissioner now makes that contention only as to the four petitioners who held common (either voting or non-voting), and argues that the other five realized capital gain upon receipt of the debentures and that they have not proved their basis in the preferred stock which they surrendered. We hold that the exchange of debentures for preferred stock was not essentially the equivalent of a taxable dividend and that the exchange was tax free pursuant to section 112 (b) (3). Section 112 (b) (3) provides for the nonrecognition of gain or loss “if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation * * And section 112 (g) (1) (E) defines “reorganization” to include “a recapitalization.” There was here in fact a readjustment of the Company’s capital structure, and there was an exchange of preferred stock solely for debentures. The transaction literally falls within the foregoing statutory provisions (cf. Wolf Envelope Co., 17 T. C. 471), and unless there are considerations which render these provisions inapplicable they are dis-positive of the present controversy. The situation here is wholly unlike that presented in Bazley v. Commissioner, 331 U. S. 737, where the form of reorganization was employed in an effort to achieve the distribution of a disguised dividend, and where it was held that the reorganization provisions were not intended to govern in such circumstances. The net effect of the transaction in the Bazley case was a pro rata distribution of debentures among stockholders in such manner as to render them the substantial equivalent of a cash dividend. No such circumstances are present here. The exchange of debentures for the preferred did not even remotely resemble a pro rata distribution of debentures among the holders of the two classes of common stock, considered either separately or together. Five holders of the preferred stock owned no common stock whatever. The holders of 87% per cent of the voting common owned no preferred and thus received no debentures. Similarly, several holders of a substantial block of non-voting common owned no preferred and likewise received no debentures. And finally, those holders of common who also owned preferred received debentures in percentages entirely unrelated to their holdings of common. To be sure, it is not a sine qua non of a taxable dividend that the distribution be made pro rata among the stockholders. But the fact that an alleged distribution is highly disproportionate raises a serious question whether it is in truth a disguised dividend. Moreover, the debentures here involved were not readily marketable by reason of the following considerations: They were unsecured and had a remote maturity date, without likelihood of acceleration except in the event of dissolution or insolvency; there was the risk that they might be subordinated to the payment of other obligations; the Company had obsolete plant and equipment, and its business was in an unhealthy state, having sustained net losses in four of the five preceding years and having fared poorly in relation to its competitors. The petitioners have asked us to find that the debentures had no fair market value at all. This we have not done, but the factors outlined above do show that the debentures could not readily have been sold, notwithstanding the Company’s relatively strong balance sheet, and this fact is an additional element to be considered in determining whether the transaction was in fact a distribution of earnings rather than the reorganization which it purported to be. Taking all the facts into account we conclude that there was not here a distribution essentially equivalent to a taxable dividend. The Bazley case is not controlling; indeed, it points in the other direction. Nor are the reorganization provisions inapplicable by reason of the absence of a “business purpose.” One of the reasons for the elimination of the preferred stock was to wipe out the accumulated “deficit” in unpaid dividends, and we have no reason to conclude on this record that such objective was not attained. This was a valid business or corporate purpose (cf. Okonite Co. v. Commissioner (C. A. 3), 155 F. 2d 248, 250, certiorari denied 329 U. S. 764; Thermoid Co. v. Commissioner (C. A. 3), 155 F. 2d 589, 590; Morainville v. Commissioner (C. A. 6), 135 F. 2d 201; Shenandoa Rayon Corp. v. Commissioner (C. A. 2), 122 F. 2d 268, certiorari denied 314 U. S. 696; H. Grady Manning Trust, 15 T. C. 930, 942), and the reorganization provisions, which otherwise literally cover this controversy, cannot therefore be rendered inapplicable. In DocJeet Nos. 26117, 30080 and 30081 decisions will Toe entered for the petitioners. In Docket Nos. 26116, 26118 to 26124-, inclusive, decisions will Toe entered under Rule 60.