BUSH TERMINAL BLDGS. CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 21, Docket 22362.

United States Court of Appeals
Second Circuit.

Argued April 14, 1953.

Decided May 15, 1953.

Holt S. McKinney, New York City, for petitioner.

H. Brian Holland, Ellis N. Slack, Helen Goodner and Cecelia H. Goetz, Washington, D. C., for respondent.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This case relates to an asserted deficiency in taxpayer's income for 1941. As the facts and rulings of the Tax Court are adequately stated in its findings and opinion reported in 17 T.C. 485, they will not be repeated here.

1. *Gain from purchase by taxpayer of its own bonds in 1941.*

(1) The taxpayer argues that the amendment of § 22(b) (9) [1] in § 114(a) of

---

1. Section 22(b) (9) as unamended reads as follows:

"(b) *Exclusions from gross income.* The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \*

"(9) [as added by Sec. 215(a), Revenue Act of 1939, c. 247, 53 Stat. 862.] Income from Discharge of Indebtedness. In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if—

"(A) it is established to the satisfaction of the Commissioner, or

"(B) it is certified to the Commissioner by any Federal agency authorized to make loans on behalf of the United States to such corporation or by any Federal agency authorized to exercise regulatory power over such corporation,

"that at the time of such discharge the taxpayer was in an unsound financial condition, and if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113(b) (3) then in effect. In such case the amount of any income of the taxpayer attributable to any unamortized premium (computed. as of the first day of the taxable year in which such discharge occurred) with

the Revenue Act of 1942, 26 U.S.C.A. § 22 (b) (9) [2]—eliminating (A) and (B) from § 22(b) (9)—was retroactive. We do not agree. The amendatory statute contains three subsections, (a), (b) and (c). Subsection (c) reads thus: "(c) *Taxable years to which Amendment Applicable.*—The amendment made by subsection (b) shall be applicable to taxable years beginning after December 31, 1939." With such an explicit provision concerning subsection (b) exclusively, we think it cannot reasonably be said that Congress intended subsection (a) to have a retroactive effect, especially as generally repeals by implication must be cold-shouldered.

▇ (2) Unamended § 22(b) (9) (B), with reference to certification "by any

respect to such indebtedness shall not be included in gross income and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction. As used in this paragraph the term 'security' means any bond, debenture, note, or certificate, or other evidence of indebtedness, issued by any corporation, in existence on June 1, 1939. This paragraph shall not apply to any discharge occurring before the date of the enactment of the Revenue Act of 1939, or in a taxable year beginning after December 31, 1942."

2. The amendatory statute, Revenue Act of 1942, 56 Stat. 798, reads as follows:
"Sec. 114. *Exclusion of Income from Discharge of Indebtedness.*
"(a) *General Rule.*—Section 22(b) (9) (relating to exclusion from gross income of corporate income derived from discharge of indebtedness) is amended to read as follows:
"(9) *Income from Discharge of Indebtedness.*—In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113(b) (3) then in effect. In such case the amount of any income of the taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction. As used in this paragraph the term 'security' means any bond, debenture, note, or certificate, or other evidence of indebtedness, issued by any corporation. This paragraph shall not apply to any discharge occurring before the date of enactment of the Revenue Act of 1939, or in a taxable year beginning after December 31, 1945.
"(b) *Railroad Corporations—Discharge of Indebtedness in Certain Judicial Proceedings.*—Section 22(b) (relating to exclusions from gross income) is amended by inserting at the end thereof the following new paragraph:
"(10) *Income from Discharge of Indebtedness of a Railroad Corporation.*—The amount of any income attributable to the discharge, within the taxable year, of any indebtedness of a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended, to the extent that such income is deemed to have been realized by reason of a modification in or cancellation in whole or in part of such indebtedness pursuant to an order of a court in a receivership proceeding or in a proceeding under section 77 of the National Bankruptcy Act, as amended. In such case the amount of any income of the taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction. Paragraph (9) shall not apply with respect to any discharge of indebtedness to which this paragraph applies. This paragraph shall not apply to any discharge occurring in a taxable year beginning after December 31, 1945.
"(c) *Taxable Years to which Amendment Applicable.*—The amendment made by subsection (b) shall be applicable to taxable years beginning after December 31, 1939."

Federal agency authorized to exercise regulatory power over such corporation, that at the time of such discharge [of indebtedness] the taxpayer was in an unsound financial condition," plainly does not include a certification by a federal "constitutional" court having statutory jurisdiction of the taxpayer's reorganization proceeding. Consequently, the certification by the reorganization judge had as little significance as the number of home runs in 1941.

■ (3) Section 22(b) (9) (A) provides that a discharge of indebtedness shall not be included in gross income if "it is established to the satisfaction of the Commissioner" that the taxpayer was in an unsound financial condition at the time of the discharged indebtedness. Obviously, here the Commissioner evidenced no such "satisfaction," for he determined a deficiency in respect of this deduction. We think this determination was conclusive of a lack of the required "satisfaction" because there was no showing of bad faith, or of gross error indicative of irrationality or caprice, on the Commissioner's part.

■ *2. Expenses in connection with taxpayer's reorganization.* These items were not deductible as "ordinary" business expenses under § 23(a) (1) (A), 26 U.S. C.A. § 23(a) (1) (A). See Skenandoa Rayon Corp. v. Commissioner, 2 Cir., 122 F.2d 268, 271; Motion Picture Capital Corp. v. Commissioner, 2 Cir., 80 F.2d 872.

■ *3. "Interest" on sinking-fund instalments.* The taxpayer's supplemental mortgage (executed pursuant to its reorganization plan) provided that the tax-payer, if and when it paid to the indenture trustee deferred sinking-fund instalments, would pay them "together with interests thereon at the rate of five (5) percent per annum." Although labelled "interest," the amounts so paid to the trustee were the taxpayer's capital assets—later to be applied in certain circumstances in reduction of its debts—and therefore when paid to the trustee did not constitute deductible "interest paid" on indebtedness within § 23(b), since none of the funds so paid to the trustee were in turn paid out as interest on taxpayer's indebtedness.

■ *4. "Net operating loss carryover."* Taxpayer asserts that it was entitled to have its "net operating loss carryover", pursuant to § 122(b) (2), 26 U.S. C.A. § 122(b) (2), increased by including three items. Two of them we have already discussed.[3] The third has to do with expense incurred in litigation involving taxpayer's right as a tenant to the use and occupancy of a powerhouse. Consequently, we think the expense was a cost incurred in "defending * * * title to property." Such a cost, under the applicable Regulation,[4] "constitutes a part of the cost of the property and is not a deductible expense." This regulation is valid [5] and applies to defense of a leasehold interest.[6] Because of the disposition of this contention, we need not consider the question whether the Tax Court correctly ruled as to this item on the basis of *res judicata* on account of the Tax Court's previous decision in Bush Terminal Buildings Company v. Commissioner, 7 T. C. 793.

Affirmed.

---

3. Namely (1) income from purchase by taxpayer of its own bonds and (2) the expenses of reorganization.

4. See Treasury Regulation 103, § 19.24–2.

5. Levitt & Sons v. Nunan, 2 Cir., 142 F.2d 795; Levitt & Sons v. Commissioner, 2 Cir., 160 F.2d 209; Garrett v. Crenshaw, 4 Cir., 196 F.2d 185; Estate of Jones v. Commissioner, 5 Cir., 127 F.2d 231.

6. Blackwell Oil & Gas Co. v. Commissioner, 10 Cir., 60 F.2d 257; McDuffie v. United States, 19 F.Supp. 239, 85 Ct.Cl. 212; cf. Murphy Oil Co. v. Burnet, 9 Cir., 55 F.2d 17, affirmed on other grounds, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; South American Gold & Platinum Co. v. Commissioner, 8 T.C. 1297, affirmed, 2 Cir., 168 F.2d 71.