ELVIN K. WHEELER and JACQUELINE H. WHEELER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wheeler v. Comm'r
Docket No. 21368-80. United States Tax Court
T.C. Memo 1984-425; 1984 Tax Ct. Memo LEXIS 250; 48 T.C.M. (CCH) 819; T.C.M. (RIA) 84425; August 8, 1984. *250 Ps claimed deductions for a casualty loss and for professional supplies on their income tax return for 1977. Ps claimed deductions for miscellaneous business expenses and for charitable contributions on their income tax return for 1978. Held:
(1) Ps failed to prove that they are entitled to a casualty loss deduction in any amount for 1977. (2) Ps failed to prove that they are entitled to any deduction for professional supplies for 1977. (3) Ps' deductible miscellaneous business expenses for 1978 determined. (4) Ps' deductible charitable contributions for 1978 determined. Elvin K. Wheeler and Jacqueline H. Wheeler, pro se. Irene Scott Carroll and Dennis Perez, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in the petitioners' Federal income taxes of $1,038.36 for 1977 and $2,508.00 for 1978. After concessions by the parties, the issues remaining for decision are: (1) Whether the petitioners are entitled to a casualty loss deduction for 1977; (2) whether the petitioners are entitled to a deduction for professional supplies for 1977; (3) whether the petitioners are entitled to a deduction for miscellaneous *251 business expenses for 1978 in excess of the amount allowed by the Commissioner; and (4) whether the petitioners are entitled to a deduction for charitable contributions for 1978 in excess of the amount allowed by the Commissioner. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Elvin K. and Jacqueline H. Wheeler, are husband and wife who maintained their legal residence at Carson, Calif., when they filed their petition. They filed joint Federal income tax returns for 1977 and 1978 with the Internal Revenue Service at Fresno, Calif.
During the years in issue, Mr. Wheeler worked for the Federal Aviation Administration (FAA) as an electrical engineer, and Mrs. Wheeler taught biology at the Phineas Banning High School (the high school). On their income tax return for 1977, the Wheelers claimed a deduction for a casualty loss in the amount of $2,550. The return stated that the deduction was attributable to "Rain storm damage to personal residence from year end storm per contractor's estimate." On their income tax return for 1977, the Wheelers claimed a deduction for professional supplies in the amount of $582.00. Included in such *252 amount was $72.80 that Mr. Wheeler paid in 1977 for a subscription to the Los Angeles Times. On December 20, 1977, Mr. Wheeler paid $59.15 for a calculator which he used at his job. He kept the calculator for 1 to 1-1/2 years. On December 19, 1977, Mrs. Wheeler paid $240.29 to Chuck's Model Shop for models that she used for demonstrative purposes in her biology classes. She retained most of the models purchased during 1977 for use in subsequent years. In December 1977, Mrs. Wheeler purchased a copy of the high school yearbook for $10.00. On their income tax return for 1978, the Wheelers claimed miscellaneous business expense deductions for transportation and telephone ($324.43), professional supplies ($248.41), tuition and books ($2,453.50), and teaching aids ($237.10). During the school year, Mrs. Wheeler sometimes conferred by telephone with the parents of her students. Many of her students lived outside the local calling area for the Wheelers' original telephone. During 1978, the Wheelers used a second telephone on a different exchange from which Mrs. Wheeler made calls to the parents of her students without incurring long-distance charges. Mrs. Wheeler also made some conference *253 calls from the original telephone. There is no evidence in the record concerning the expenses attributable to the second telephone. During 1978, Mr. Wheeler purchased a camera for use in his work. Mr. Wheeler used the camera, which cost $77.17, to take pictures of airplane accidents during the course of his investigations of such accidents. During 1978, Mr. Wheeler also purchased a copy of a radio engineer's handbook, which was updated annually, for $75. Mr. Wheeler used the book in his work, but the FAA did not provide a copy of the book for his use. During 1978, Mrs. Wheeler occasionaly made purchases in the school store for which she paid by check. During 1978, Mrs. Wheeler attended classes at the University of Southern California (USC). She paid $311.50 to USC for books and parking during September 1978, and she paid $9.44 for photocopying related to her coursework. On their income tax return for 1978, the Wheelers claimed a deduction for charitable contributions in the amount of $1,698, of which $762 remains in dispute. The Commissioner conceded church contributions of $900, YMCA contributions of $23, and a Combined Federal Campaign contribution of $13. In addition to the *254 contributions conceded by the Commissioner, the petitioners gave $60.00 to Southern University and $27.50 to the school band and booster club during 1978. In that year, the Wheelers also donated various articles of used clothing, small appliances, and miscellaneous items to the Purple Heart Veterans Rehabilitation Services, Inc. (Purple Heart), claiming a deduction of $265 for such donations. In his notice of deficiency, the Commissioner disallowed the casualty loss deduction and the professional supplies deduction claimed by the Wheelers for 1977. The Commissioner also disallowed a portion of their claimed deductions for miscellaneous expenses and for charitable contributions for 1978. OPINION The first issue for decision is whether the petitioners are entitled to a casualty loss deduction for 1977. Section 165(a) of the Internal Revenue Code of 1954[1] allows a deduction for losses incurred in the taxable year that are not compensated for by insurance or otherwise, but section 165(c) limits the deductions allowable to an individual to certain categories specified therein. Under section 165 (c)(3), the losses deductible by an individual include those arising "from fire, storm, *255 shipwreck, or other casualty, or from theft. " Such paragraph also provides that each casualty loss is deductible only to the extent that it exceeds $100. The regulations under section 165 provide that the deduction attributable to a casualty loss is the losser of the property's adjusted basis or the diminution in the property's value caused by the casualty. Sec. 1.165-7(b)(1), Income Tax Regs. The diminution in the value of the property may be evidenced by competent appraisals of the property or by the cost of repairing it. Sec. 1.165-7(a)(2), Income Tax Regs. However, if the taxpayer uses the latter measure of damage, he must show that the amounts spent were necessary to restore the property to its condition immediately preceding the casualty, that such amounts were not excessive, that the repairs did not more than care for the damage sustained, and that the *256 value of the property after the repairs did not increase as a result of the repairs. Sec. 1.165-7(a)(2)(ii), Income Tax Regs. The petitioners have the burden of proving the occurrence of the casualty as well as the amount of any deductible casualty loss. Rule 142(a), Tax Court Rules of Practice and Procedure[2]; Heyn v. Commissioner,46 T.C. 302 (1966). Mr. Wheeler testified that a severe wind and rain storm occurred on February 5, 1978, destroying some of his shrubbery, washing away a portion of his asphalt driveway, and causing his roof to leak. Additionally, he testified that he had to replace the flashing around his fireplace and that his ceiling and walls sustained water damage. Mr. Wheeler testified that he repaired the roof and replaced the shrubs himself. The Wheelers submitted three documents to substantiate the occurrence and the amount of their casualty loss. The first is a contractor's estimate in the amount of $2,650 to repair damages similar to those outlined by Mr. Wheeler in his testimony. The document recites that the Wheelers accepted the estimate on May 8, 1977. However, Mr. Wheeler testified *257 that the date of the acceptance was erroneous and that it in fact occurred on May 8, 1978. He further testified that he did not have the repairs performed by the contractor who submitted the estimate. The second document is dated July 31, 1981, and is labeled "purchase order." The purchase order specifies that it is for one driveway, at a cost of $550, to be "shipped" to "Ernie Goff, 8613 3rd Avenue." Mr. Wheeler testified that such document was the receipt for repairs to his driveway attributable to the 1978 storm. The third document is a bill, dated October 5, 1981, to Mr. Wheeler from a floor covering firm in Long Beach. Mr. Wheeler testified that such document was the receipt for repairs to his ceiling and tile necessitated by the 1978 storm. We conclude that the petitioners have utterly failed to prove that they are entitled to a casualty loss deduction in any amount for 1977. The record is thoroughly confused. [3] *259 The petitioners have attempted to prove the amount of their loss through evidence of repair costs, but their proof is highly unsatisfactory and falls short of meeting the requirements of section 1.165-7(a)(2)(ii), Income Tax Regs. The repair estimate bears a date *258 before the damage was supposedly sustained, and we are not persuaded by Mr. Wheeler's contention that the date on the estimate was erroneous. More importantly, this Court has specifically rejected the use of repair estimates as evidence of the amount of a casualty loss, when the actual repairs and expenditures were not made pursuant to the estimate. Lamphere v. Commissioner,70 T.C. 391, 396 (1978); Farber v. Commissioner,57 T.C. 714, 719 (1972). [4] Mr. Wheeler testified that, although the petitioners apparently accepted the estimate, the contractor who provided it never performed the specified repairs. Accordingly, we find that the estimate of repairs, upon which the petitioners based their casualty loss deduction, is not persuasive evidence of the amount of any loss. The petitioners' other documentation is similarly unconvincing. The purchase order for the driveway is made out to "Ernie Goff," and the petitioners have not explained to us Mr. Goff's relation to the present case. The bill for flooring is dated more than 3-1/2 years after the supposed loss was sustained, and the petitioners have failed to show us the extent, if any, to which such repairs were attributable to the 1978 storm. Finally, even if the petitioners did incur repair expenses attributable to the 1978 storm damage, they have not shown that such repairs did no more than restore to the property value *260 that it lost as a result of the storm. For all such reasons, we hold that the petitioners have failed to prove that they are entitled to a casualty loss deduction in any amount for 1977. The second issue for decision is whether the petitioners are entitled to a deduction for professional supplies for 1977. The petitioners bear the burden of proof regarding these expenses. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Included in their deduction for professional supplies is $72.80 that the petitioners paid for a subscription to the Los Angeles Times in 1977. Mr. Wheeler testified that he used the newspaper to follow fluctuations in the prices of stocks that he owned. Mr. Wheeler admitted that he was not in the trade or business of trading stock and that his purchase of the newspaper was motivated, at least in part, by personal considerations. Under such circumstances, the petitioners have not proved that they are entitled to a deduction in any amount for the subscription to the Los Angeles Times. Generally, the cost to an individual of a daily newspaper of general circulation is inherently a nondeductible personal expenditure. Sec. 262; Wallendal v. Commissioner,31 T.C. 1249, 1252 (1959). *261 [5] The petitioners admitted that they were not in the trade or business of trading stock, and they have shown no other connection between the newspaper and their jobs; accordingly, no portion of the subscription cost is deductible under section 162. Additionally, we believe that Mr. Wheeler's vague testimony does not suffice to render any portion of such cost deductible under section 212. Mr. Wheeler admitted that his newspaper reading was not confined to the financial pages; even if some portion of the subscription cost were deductible, the petitioners have failed to prove its amount. The petitioners also included in the deduction for professional supplies the cost of the calculator purchased by Mr. Wheeler and the models purchased by Mrs. Wheeler. Mr. Wheeler testified that he disposed of the calculator after 1 to 1-1/2 years; Mrs. Wheeler testified that she retained most of the models from year to year. Since such assets had useful lives in excess of 1 year, the petitioners *262 may not deduct their cost. See sec. 263; American Envelope Co. v. Commissioner,29 T.C. 307, 312 (1957); Wemple State Bank v. Commissioner,1 B.T.A. 415 (1925). [6] The petitioners have not claimed that they are entitled to a depreciation deduction for the calculator and the models, and in any event, they have failed to prove the useful lives of such assets. See Spartanburg Terminal Co. v. Commissioner,66 T.C. 916 (1976). Nor are the petitioners entitled to deduct as a professional supply the cost of the high school yearbook that Mrs. Wheeler purchased. The cost of such an item is a nondeductible personal expenditure. Sec. 262. Finally, the petitioners have not shown that any of the remaining checks submitted to substantiate the professional supplies deduction for 1977 represented the payment of a deductible expenditure. The petitioners did not testify at all concerning two of the checks. Three of the checks were payable to the high school student body for charitable purposes or in connection with a candy drive. It is unclear what, *263 if anything, was purchased with the remaining two checks payable to the student body. Accordingly, the petitioners have not proved that they are entitled to a deduction in any amount for professional supplies for 1977. The third issue for decision is whether the petitioners are entitled to a deduction for miscellaneous business expenses for 1978. The petitioners deducted $324.43 for transportation and telephone expenses on their 1978 return. They introduced no evidence concerning their transportation expenditures during 1978. Accordingly, they have failed to prove that they are entitled to any deduction for such expenditures. Rule 142(a). Moreover, the petitioners have not proved the expenses associated with their second telephone for 1978. Mrs. Wheeler testified that the bills which they submitted to substantiate such expenses pertained to their original telephone. It is not clear from the record why the petitioners did not produce the records relating to the telephone for which they claimed a deduction; nevertheless, they had the burden of proving their claimed deductions. Rule 142(a); Welch v. Helvering,supra.In the absence of any evidence concerning the expenses associated *264 with the second telephone, we must deny the petitioners' deduction for such expenses. Additionally, although it appears from the record that some of the calls from the petitioners' original telephone may have been related to Mrs. Wheeler's job, the petitioners made no attempt to identify such calls, and we have no basis to allow a deduction for any portion of the expenses of the original telephone. Accordingly, the petitioners have failed to prove that they are entitled to any deduction for telephone expenses for 1978. The petitioners deducted $248.41 for professional supplies on their 1978 income tax return. Included in such amount were the costs of books and a camera that Mr. Wheeler purchased for use in his employment. Mr. Wheeler testified that he paid $75 for a radio engineer's handbook which was revised annually and that such book was necessary to his employment. Thus, we hold that the petitioners are entitled to deduct the cost of the handbook. However, the petitioners have failed to show that the useful lives of the camera and any other books purchased in 1978 did not exceed 1 year. Accordingly, the costs of such assets are not deductible. American Envelope Co. v. Commissioner,supra. *265 Finally, in support of the 1978 professional supplies deduction, Mrs. Wheeler testified that two checks submitted to substantiate the petitioners' 1978 charitable contributions were in fact payment for purchases that she made at the high school store. However, the petitioners have offered no evidence to prove what Mrs. Wheeler purchased with such checks, and the petitioners are entitled to no deduction for them. The petitioners deducted $2,453.50 for tuition, books, photocopying, and parking costs incurred in connection with classes that Mrs. Wheeler attended at USC during 1978. At the trial, the Commissioner conceded that the tuition expense in the amount of $2,000 was deductible under section 162. See sec. 1.162-5, Income Tax Regs. However, he contended that the petitioners had not substantiated the cost of the books, photocopying, and parking. At the trial, the petitioners introduced checks payable to USC totaling $311.50; Mrs. Wheeler testified that she paid such amounts for books and parking. The petitioners also introduced checks totaling $9.44 which Mrs. Wheeler testified were in payment of photocopying costs related to her studies. On such record, we conclude that the *266 petitioners have substantiated their claimed deduction for books, parking, and photocopying to the extent of $320.94, and accordingly, they are entitled to deduct such amount pursuant to section 162. Sec. 1.162-5, Income Tax Regs. Since they introduced no evidence regarding the remainder of their claimed deduction for education expenses, the petitioners are entitled to no deduction for such portion. At the trial, the petitioners introduced nine checks to substantiate their 1978 deduction of $237.10 for "teaching aids." Eight of such checks were payable to the high school student body; one of them specifies that it was paid for candy, and the remainder bear no notation. The ninth check was payment for a calculator. The petitioners did not testify regarding such checks, and there is no evidence that the purchases were ordinary and necessary to Mrs. Wheeler's teaching position. Accordingly, the petitioners have not met their burden of proof regarding the deduction for teaching aids. Rule 142(a). The fourth issue for decision is whether the petitioners are entitled to a deduction for charitable contributions for 1978 in excess of the amount allowed by the Commissioner. We have found *267 as a fact that the petitioners gave $27.50 to the high school band and booster club and $60.00 to Southern University during 1978; accordingly, they may deduct such amounts. The petitioners also claimed a deduction of $265 for donations of used clothing and other items to Purple Heart. Where a charitable deduction is made in property other than money, section 170 generally allows a deduction for the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c), Income Tax Regs. The petitioners bear the burden of proving both the contributions and the fair market value of the property contributed. Rule 142(a); Zmuda v. Commissioner,79 T.C. 714, 726 (1982); see also sec. 1.170A-1(a)(2)(ii), Income Tax Regs. The petitioners testified that they donated clothing and other miscellaneous articles to Purple Heart, and they submitted three receipts from Purple Heart to substantiate their deduction. Each receipt expressly provided that Purple Heart would not "fix an evaluation on your gift; this is the privilege and responsibility of the donor." Nevertheless, the receipts contained valuations for clothing, small appliances, and miscellaneous items totaling $265. Mr. *268 Wheeler testified that Purple Heart supplied the values. The petitioners did not specify each item donated and its value; their testimony was speculative, general, and vague. We are satisfied that the petitioners did donate some used property to Purple Heart during 1978. However, their proof of the items donated and the value of such items was not satisfactory. The hearsay valuations provided by Purple Heart are especially unconvincing in light of the disclaimer on the receipts. Accordingly, bearing heavily against the petitioners who are responsible for the skimpy record, we conclude that the value of the items donated to Purple Heart in 1978 is $50, and the petitioners are entitled to a deduction for such amount. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930); Zmuda v. Commissioner,supra.To reflect concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue. The deductibility of casualty losses was modified by sec. 203, Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 422, for taxable years beginning after Dec. 31, 1982.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
3. The petitioners never explained the fact that, although the damage was supposedly sustained in 1978, they claimed a deduction for 1977. The petitioners' 1977 return specified that the damage resulted "from year end storm." Because of severe storms, high tides, wave action, high winds, mudslides, and flooding occurring on Feb. 5, 1978, the President declared portions of southern California a disaster area. Rev. Rul. 78-440, 1978-2 C.B. 115, 116. However, the petitioners did not elect the provisions of sec. 165(h), now sec. 165(i)↩, regarding the timing of casualty loss deductions attributable to disasters, on their 1977 return or at any other time. 4. Abrams v. Commissioner,T.C. Memo. 1981-231, is not to the contrary. In that case, the taxpayer sought to prove the amount of the casualty loss by showing a decrease in the fair market value resulting from the casualty as determined by competent appraisal ( sec. 1.165-7(a)(2)(i), Income Tax Regs.) not by showing the cost of repairs ( sec. 1.165-7 (a)(2)(ii), Income Tax Regs.↩).
5. Hall v. Commissioner,T.C. Memo. 1980-419, affd. without published opinion 659 F.2d 1073 (5th Cir. 1981); Bothke v. Commissioner,T.C. Memo. 1980-1, affd. without published opinion 667 F.2d 1030↩ (9th Cir. 1981).
6. See also Kosmal v. Commissioner,T.C. Memo. 1979-490, affd. per curiam 670 F.2d 842 (9th Cir. 1982); Clemons v. Commissioner,T.C. Memo. 1979-273↩.